IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Akeem Alim-Nafis Abdullah-Malik, | ) | C/A No.: 1:14-109-RBH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Bruce M. Bryant, Sheriff; James F. Arwood, Jail Administrator; Richard L. Martin Jr., Assistant Jail Administrator; Gary L. Davis, Security Commander; and Sandie Stervul, Dietitian Trinity Food Services Group Oldsmar, Florida Contracted thru York County Detention Facility, | ) ) ) ) ) ) ) ) ) | REPORT AND RECOMMENDATION |
| Defendants. | ) ) | |

Plaintiff Akeem Alim-Nafis Abdullah-Malik, proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that, while incarcerated at the York County Detention Center ("YCDC"), the following individuals violated his constitutional rights: Sheriff Bruce M. Bryant ("Bryant"), Jail Administrator James F. Arwood ("Arwood"), Assistant Jail Administrator Richard L. Martin Jr. ("Martin"), Security Commander Gary L. Davis ("Davis"), and Trinity Food Services Group Dietitian Sandie Stervul ("Stervul") ( collectively "Defendants").[1] [ECF No. 47 at 3–4, 5].

This matter comes before the court on the motion to dismiss of Bryant, Arwood,

---

[1] On September 25, 2014, the court dismissed the remaining defendants named in Plaintiff's second amended complaint. [ECF No. 153].

Martin, and Davis (collectively "YCDC Defendants").[2] [ECF No. 58]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the dismissal procedures and the possible consequences if he failed to respond adequately to YCDC Defendants' motion. [ECF No. 59]. The motion having been fully briefed [ECF Nos. 112, 132], it is ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the district judge grant YCDC Defendants' motion to dismiss.

I.      Factual and Procedural Background

In his 54-page second amended complaint, Plaintiff makes general allegations of excessive bail, first amendment violations, gross negligence, racial discrimination, cruel and unusual punishment, and due process violations. [ECF No. 47]. Plaintiff also makes specific allegations against YCDC Defendants. *Id.* Plaintiff alleges that he informed

---

[2] By way of procedural background, on June 16, 2014, defendants Bryant and Arwood filed a motion to dismiss. [ECF No. 58]. On August 12, 2014, the undersigned authorized service of process on defendants Martin and Davis. [ECF No. 78]. On September 12, 2014, counsel representing Bryant and Arwood filed an answer on behalf of Martin and Davis. [ECF No. 105]. YCDC Defendants filed a reply on November 12, 2014 [ECF No. 132], requesting that the court allow the motion to dismiss to incorporate Martin and Davis. Given the latter service and filing of new pleadings was effectuated during the pendency of the motion to dismiss and because the grounds asserted in the motion are equally applicable to Martin and Davis and Plaintiff makes arguments specific to Martin and Davis, the undersigned considers the motions to dismiss as also brought by Martin and Davis.

Arwood and Bryant about his excessive bail. *Id.* at 6–7. Plaintiff claims that YCDC Defendants did not permit him to pray in the jail's designated prayer area and states that he requested that YCDC Defendants provide, or assist in providing, Jummah services on Fridays. *Id.* at 9–10. Plaintiff further states that he was provided a diet titled "Ova-Lacto Vegetarian Diet" and states that his requests to Arwood and Martin to modify this diet were met with "animosity, denials, requests and grievances denied." *Id.* at 16.

Additionally, Plaintiff claims that YCDC Defendants racially discriminated against him during classification by "falsifying documents, lying under oath, changing sanctions dates to support further segregation dates [and] inappropriately input[ting] in data base not matching written sanction days." *Id*. at 22. Plaintiff states that YCDC Defendants intercepted mail addressed to Latinos and African-American officers. *Id.* Additionally, Plaintiff claims that another YCDC officer provided him with a wheelchair, but that Arwood and Martin ordered that the wheelchair be taken from him. *Id.* at 31. Plaintiff alleges that YCDC Defendants restricted his access to grievance forms and that Bryant refused to respond to his complaints. *Id.* at 40, 44. Plaintiff seeks monetary damages and declaratory and injunctive relief. *Id.* at 47.

II.     Discussion

    A.     Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (quoting *Bell Atl. Corp.*

3

*v. Twombly*, 550 U.S. 544, 570 (2007)). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the legal conclusion. *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

Pro se complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975). The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

    B.    Analysis

        1.    Official Capacity

YCDC Defendants argue that, to the extent Plaintiff sues them for monetary

damages in their official capacities, they are immune from suit. [ECF No. 58-1 at 2–3]. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan,* 415 U.S. 651, 662–63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.,* 242 F.3d 219, 222 (4th Cir. 2001).

Bryant is the York County Sheriff. [ECF No. 47 at 3]. In the state of South Carolina, county sheriffs and their deputies are State employees. *Edwards v. Lexington Cnty. Sheriff's Dep't,* 688 S.E.2d 125, 127 n. 1 (S.C. 2010) ("[U]nder South Carolina law, the sheriff and sheriff's deputies are State, not county, employees."); *Cone v. Nettles*, 417 S.E.2d 523, 525 (S.C. 1992). Arwood, Martin, and Davis work at YCDC. To the extent these defendants are employees of the York County Sheriff, they are also entitled to immunity in their official capacities from Plaintiff's claims for monetary damages. *See, e.g., Barrett v. Brook*, No. 4:00-2967-19BF, 2001 WL 34684725 at *10 (D.S.C. Sept. 28, 2001). The State of South Carolina has not consented to be sued. S.C. Code Ann. § 15-78-20(e). Therefore, the undersigned recommends that Plaintiff's claims for monetary damages against YCDC Defendants in their official capacities be dismissed.

### 2. Declaratory and Injunctive Relief

Plaintiff is no longer confined in YCDC and is presently incarcerated in the Kershaw Correctional Institution in the custody of the South Carolina Department of Corrections ("SCDC"). [ECF Nos. 47 at 2; 70 at 1–2]. Because Plaintiff has been transferred to another facility, his requests for declaratory and injunctive relief related to his confinement at YCDC are moot. *See Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007) (finding that a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to the conditions of his confinement there); *see also Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (finding that a transfer rendered moot a prisoner's claims for injunctive and declaratory relief, but not claims for damages); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) (same). Accordingly, the undersigned recommends that Plaintiff's requests for declaratory and injunctive relief be denied.

### 3. Excessive Bail

YCDC Defendants argue that Plaintiff's excessive bail claim should be dismissed because they were not responsible for Plaintiff's bail. [ECF No. 58-1 at 3]. To sustain a claim under § 1983, Plaintiff must establish that each defendant was personally involved in the deprivation of his constitutional rights. *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). Plaintiff's complaint does not set forth any facts that allege that YCDC Defendants set Plaintiff's bail or had any authority to reduce Plaintiff's bail. Therefore, the undersigned recommends that Plaintiff's excessive bail claim be dismissed.

4.      First Amendment Violations/Diet

YCDC Defendants allege that Plaintiff's First Amendment claims do not set forth sufficient facts to show that they are liable to Plaintiff. [ECF No. 58-1 at 4]. Plaintiff's complaint is vague regarding his religious requests and YCDC Defendants' personal involvement therein. For instance, Plaintiff alleges that he was not allowed to pray in an area of the jail, but provides no other details as to what area he is referring, when he was so prohibited, and whether he was provided an explanation and/or an alternative place to pray. [ECF No. 47 at 9]. Plaintiff also alleges he was given an initial visit with a clergyman, but thereafter was forced to place the clergy on his visitation list for future visits. *Id*. The complaint is silent as to how many visits Plaintiff sought from clergy, when such visits were sought, or why his religion requires multiple visits from clergy. Finally, Plaintiff alleges that YCDC did not offer Jummah services on Fridays. *Id*. However, Plaintiff has not alleged that he was prohibited from conducting personal Jummah services in his cell. *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450–451 (1988) (finding that a government regulation does not substantially burden religious activity when it only has an incidental effect that makes it more difficult to practice the religion).

To the extent Plaintiff complains of the diet he has been served, he does not allege that it violates his religion. Plaintiff is not entitled to the diet of his choice. *See Ayers v. Uphoff*, 1 F. App'x 851, 855 (10th Cir. 2001) (finding that where prisoner complained about substitute food that he was being provided on a special diet, the court

held that "Plaintiff [had] no constitutional right to preselect foods or demand a certain variety of foods," and that "Plaintiff's dissatisfaction with the menu at the prison [was] not sufficient to support an Eighth Amendment claim."). Because, Plaintiff has failed to set forth sufficient facts concerning his prayer requests and diet claims, he has failed to allege a violation of his First Amendment rights sufficient to survive Defendants' motion to dismiss.

YCDC Defendants also argue that Plaintiff's claims should be dismissed because he may not recover monetary damages under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, et seq., ("RLUIPA"). *Id.* at 5. To the extent Plaintiff is attempting to pursue a claim under the RLUIPA, the Fourth Circuit has held that the RLUIPA does not permit claims for money damages against officials sued in their individual or official capacities. *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009). The undersigned recommends that YCDC Defendants' motion to dismiss Plaintiff's First Amendment claims be granted.

### 6. Racial Discrimination

Plaintiff claims that defendants are of European descent, and argues that they discriminated against him through the classification procedures and seized mail addressed to Latino and African-American officers. [ECF Nos. 47 at 22; 112 at 24]. Plaintiff has provided no information, other than YCDC Defendants are of a different race, to support his claim that they discriminated against him based on race. A merely conclusory allegation of discrimination, without facts supporting the assertion that an officer's

conduct was motivated by the litigant's race, is insufficient to state an actionable § 1983 claim. *Chapman v. Reynolds*, 378 F.Supp. 1137, 1140 (W.D.Va. 1974). Because Plaintiff fails to provide sufficient factual allegations to state a claim that is plausible on its face, the undersigned recommends that Plaintiff's race discrimination claims be dismissed.

       7.      Cruel and Unusual Punishment (Eighth Amendment)

Plaintiff's only allegation of cruel and unusual punishment specific to YCDC Defendants[3] is that Arwood and Martin ordered that the wheelchair Plaintiff was using be taken. The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–103 (1976). To state an Eighth Amendment violation with respect to prison conditions, a prisoner must show: "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991); *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir. 1995). Although Plaintiff generally alleges he needed the wheelchair, he does not indicate that a medical professional directed that he be provided with a wheelchair indefinitely. Therefore, Plaintiff has failed to allege sufficient facts to support a claims that Arwood and Martin deprived him of a basic human need or acted with deliberate indifference, and the undersigned recommends that YCDC Defendants' motion to dismiss Plaintiff's Eighth Amendment claim be granted.

---

[3] Plaintiff's supervisory liability claims are discussed below.

### 8. Denial of Due Process Based on Grievances

Plaintiff claims that YCDC Defendants denied him access to grievance forms, and improperly denied his grievances. Because a prisoner has no constitutional right to a grievance procedure, Plaintiff's allegations fail to state a constitutional claim. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) ("[A] prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."). The undersigned recommends that Plaintiff's due process claim be dismissed.

### 9. Supervisory Liability

Plaintiff appears to allege that because YCDC Defendants are supervisors, they are responsible for the unconstitutional actions taken by other YCDC officers, including alleged gross negligence in his medical treatment. *See generally* ECF Nos. 47, 112. Generally, the doctrine of vicarious liability is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom that results in illegal action. See *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984), cert. denied, *Reed v. Slakan*, 470 U.S. 1035 (1985). The undersigned has separately addressed all of Plaintiff's allegations in which he states that one or more of the YCDC

Defendants was involved or aware of Plaintiff's complaints. Plaintiff's remaining claims that YCDC Defendants' subordinates engaged in wrongful conduct, without more, are insufficient factual allegations to demonstrate that YCDC Defendants were aware of, or deliberately indifferent to, any constitutional risk of injury to Plaintiff. The undersigned recommends that the court dismiss any supervisory liability claims asserted by Plaintiff.

III.     Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that YCDC Defendants' motion to dismiss [ECF No. 58] be granted. If the district judge accepts this recommendation, only Plaintiff's claim against Stervul remains. Because Stervul has not filed a dispositive motion within the deadlines set by the original scheduling order [ECF No. 38], it appears that claims may be ready for trial, absent a request for and grant by the court for an extension within which to file a dispositive motion.

IT IS SO RECOMMENDED.

January 14, 2015                                        Shiva V. Hodges
Columbia, South Carolina                      United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).